```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
LUIS GARCIA, et al.,                            :

                Plaintiffs,                     :       OPINION AND ORDER

        -v.-                                    :       14 Civ. 5298 (AJN) (GWG)

SPECTRUM OF CREATIONS INC. et al.,              :

                                                :
                Defendants.
                                                :
---------------------------------------------------------------X
```

**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

Luis Garcia filed this suit against his former employer, Spectrum of Creations, Inc. d/b/a Food Trends ("Food Trends"), and Alla Moskowicz for violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA"), and the New York Labor Law ("NYLL"). On January 21, 2015, Miguel Flores joined the lawsuit, and three other individuals have joined the lawsuit since. Plaintiffs now move to have this case conditionally approved as a collective action with notice being sent to "all non-exempt employees."[1] For the following reasons, plaintiffs' motion is granted in part and denied in part.

---

[1] See Notice of Plaintiffs' Motion for Conditional Collective Certification and for Court Facilitation of Notice Pursuant to 29 U.S.C. § 216(b), filed Jan. 21, 2015 (Docket # 15) ("Notice of Motion"); Memorandum of Law in Support of Plaintiffs' Motion for Conditional Collective Certification, filed Jan. 21, 2015 (Docket # 16) ("Pl. Mem."); Declaration of Luis Garcia, filed Jan. 21, 2015 (Docket # 17) ("Garcia Decl."); Declaration of Miguel Flores, filed Jan. 21, 2015 (Docket # 18) ("Flores Decl."); Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion for Conditional Collective Certification, filed Feb. 27, 2015 (Docket # 21) ("Def. Mem."); Declaration of Alla Moskowicz, filed Feb. 27, 2015 (Docket # 22) ("Moskowicz Decl."); Reply Memorandum of Law in Support of Plaintiffs' Motion for Conditional Collective Certification, filed Mar. 25, 2015 (Docket # 34) ("Pl. Reply").

I.      BACKGROUND

    A.      Facts

Defendants operate a business called Food Trends, located at 56 East 41st Street in Manhattan. Garcia Decl. ¶ 1; Flores Decl. ¶ 1. Garcia was initially hired in December 2008 to work as a "counter person, food preparer and delivery person," while Food Trends was still operating as a restaurant. Garcia Decl. ¶ 1. Sometime in 2009, the restaurant closed its "in-house services and became a full-time catering business." Id. Beginning with the changeover, Garcia worked as a "food preparer and delivery person for the catering business," until his termination in March 2012. Id. Flores was initially hired in June 2006 to work as a delivery person. Flores Decl. ¶ 1. From July 2009 until the end of his employment in March 2014, Flores worked as a "delivery dispatcher and delivery person." Id. Throughout the entire period of his employment, Flores also worked as a "food preparer." Id.

Both Flores and Garcia identify 15 to 16 other employees of Food Trends who were also food preparers or delivery people. See Garcia Decl. ¶ 2; Flores Decl. ¶ 2. They assert that "[a]ll of the cooks and food preparers (including sandwich, pizza, salad, pasta, fruit and cheese preparers) at Food Trends were required to work as delivery persons, and all of the delivery persons were also required to work as food preparers." Garcia Decl. ¶ 2; Flores Decl. ¶ 2.

Garcia asserts that he was paid a fixed salary of $400 per week for all hours worked until 2010. Garcia Decl. ¶ 6. In or about 2010 until his termination, Garcia was paid at an hourly rate of $8.00 for all hours worked. Id. From December 2008 to March 2012, Garcia worked a weekly schedule of 13 hours per day for six days per week. Id. ¶ 4. Garcia asserts he was required to "clock out" at 3:00 p.m. despite regularly working until 6:00 p.m., and he was not compensated for these "off-the-clock" hours worked. Id. ¶ 5. Garcia never received spread-of-

2

hours payments despite routinely working more than 10 hours per day. Id. ¶ 8.

Flores asserts that he worked between 10 and 12 hours per day for five to six days per week for the entirety of his employment with Food Trends. Flores Decl. ¶ 4. He asserts that he was paid a fixed salary of $560 per week for all hours worked until January 2009. Id. ¶ 5. From January 2009 until July 2009, he was paid a fixed salary of $600 per week for all hours worked. Id. From July 2009 until April 2013, he was paid $514.24 per week — $260 in cash and $254.24 by check. Id.

In May 2013, Flores began to be paid overtime. Id. Until September 2013, Flores was paid at an hourly rate of $11.00 and an hourly overtime rate of $16.50. Id. From September 2013 until October 2013, Flores was paid at an hourly rate of $12.00 and an hourly overtime rate of $18.00. Id. From October 2013 until December 2013, Flores was paid as a tipped employee at a regular hourly rate of $5.65 and an hourly overtime rate of $9.285. Id. ¶ 6. From January 2014 until his termination, Flores was paid at an hourly rate of $5.65 and an hourly overtime rate of $9.66. Id. Flores asserts that prior to May 2013, he was never paid overtime compensation for hours worked over 40 per week, and that he never received any notice informing him that his fixed salary was intended to cover such hours. Id. ¶ 7. Flores also never received spread-of-hours payments despite routinely working more than 10 hours per day. Id. ¶ 8.

Both Garcia and Flores state that, based on personal observations and conversations with other employees, other employees (1) were similarly paid and were required to work similar hours, Garcia Decl. ¶¶ 4, 6; Flores Decl. ¶¶ 4-6; (2) did not receive overtime compensation for hours worked over 40 per week, Garcia Decl. ¶ 7; Flores Decl. ¶ 7; (3) did not receive spread-of-hours payments even if their workday exceeded 10 hours, Garcia Decl. ¶ 8; Flores Decl. ¶ 8; and (4) did not receive wage and hour notice as required under the NYLL, Garcia Decl. ¶ 9; Flores

Decl. ¶ 9. Both Garcia and Flores state that, "[b]ased on [their] personal observations and conversations," they and other tipped employees did not receive notice that defendants were taking a tip credit, notice that all the tips received must be retained by them, notice that the tip credit taken by defendants may not exceed the value of the tips the employees actually received, or any statement as to the amount of tip credit allowance taken by defendants for each payment period. Garcia Decl. ¶ 11; Flores Decl. ¶ 11. Garcia and Flores state that they were both required to engage in "non-tipped related work, such as preparing food, for more than two hours or twenty percent of [their] work time," which was "unrelated to duties as a tipped employee," as were all other tipped employees, "[t]o the best of [their] knowledge." Garcia Decl. ¶ 12; Flores Decl. ¶ 12.

Garcia states that defendants retained "all tips and service charges" that he received from customers. Garcia Decl. ¶ 13. Flores states that he never received any tips until October 2013 because defendants retained all "tips and service charges" that he received from customers and that, after October 2013, defendants retained part of the tips he received from customers. Flores Decl. ¶ 13. Flores states that he was never informed of how tips were distributed among employees and asserts that defendants often kept all of the tips employees received for catering events. Id. Both Garcia and Flores state that defendants did not provide "notice to customers that management was sharing a portion of the mandatory service charges." Garcia Decl. ¶ 13; Flores Decl. ¶ 13. Both of them state that, "[t]o the best of [their] knowledge, it was Defendants' policy to retain tips and service charges received by tipped employees." Garcia Decl. ¶ 13; Flores Decl. ¶ 13.

Defendants have submitted a declaration from Alla Moskowicz, the owner of Food Trends. Moskowicz Decl. ¶ 1. She states that the statements by Garcia and Flores that all cooks

4

and food preparers were required to work as delivery persons and all delivery persons were required to work as food preparers are false. Id. ¶ 5. She also avers that Garcia never made deliveries and that he was a sandwich preparer who worked five days per week and left by 5:00 p.m. every day — because Food Trends was closed by 5:00 p.m. Id. ¶ 6. Finally, she states that Flores was not a "delivery dispatcher," since "no such title within Food Trends exists for any of its non-exempt employees." Id. ¶ 7.

    B.    The Instant Motion

Plaintiffs seek an order granting the following:

> (1) Conditional certification of the FLSA claim as a representative collective action pursuant to 29 U.S.C. § 216(b) on behalf of Covered Employees[2]; (2) Court-facilitated notice (including Spanish translation) of this FLSA action to Covered Employees, including a consent form (or opt-in form) as authorized by the FLSA; (3) Approval of the proposed FLSA notice of this action and the consent form . . . ; (4) Production in Excel format of names, Social Security numbers, titles, compensation rates, dates of employment, last known mailing addresses, email addresses, all known and [sic] telephone numbers of all Covered Employees within 10 days of Court approval of conditional certification; and (5) Posting by Plaintiffs' counsel of the notice, along with the consent forms, in Defendants' place of business where Covered Employees are employed during regular business hours.

Pl. Mem. at 1-2 (footnote omitted). Plaintiffs have also annexed to their memorandum of law a proposed court-authorized collective action notice and consent form, in both English and Spanish, to be sent to potential plaintiffs. See Notice of Pendency of Lawsuit Regarding Wages and "Consent to Sue" Form, filed Jan. 21, 2015 (annexed as Ex. A to Pl. Mem.). Defendants oppose this motion. See Def. Mem.; Moskowicz Decl.

---

    [2] Plaintiffs define "Covered Employees" as "all non-exempt employees, including delivery persons and food preparers, employed by Defendants at Food Trends within the last six (6) years." Pl. Mem. at 1; see Proposed Order (annexed as Ex. 1 to Notice of Motion) ("Proposed Order"), at ¶ 1.

II.     APPLICABLE LEGAL PRINCIPLES

The FLSA was enacted to eliminate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "The purpose of the FLSA . . . was to 'guarantee [] compensation for all work or employment engaged in by employees covered by the Act.'" Reich v. N.Y.C. Transit Auth., 45 F.3d 646, 648-49 (2d Cir. 1995) (alteration in original) (quoting Tenn. Coal, Iron & R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 602 (1944)).

> Section 216(b) of the FLSA provides, in pertinent part:
>
> An action to recover . . . liability . . . may be maintained against any employer . . . by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b). While the statute does not prescribe any procedures for approval of collective actions, § 216(b) has long been construed to grant authority to a district court to mandate that notice be given to potential plaintiffs informing them of the option to join the suit. See Hoffmann-La Roche Inc. v. Sperling, 493 U.S. 165, 169 (1989) ("[D]istrict courts have discretion, in appropriate cases, to implement 29 U.S.C. § 216(b) . . . by facilitating notice to potential plaintiffs."); Braunstein v. E. Photographic Labs., Inc., 600 F.2d 335, 336 (2d Cir. 1978) ("Although one might read the [FLSA], by deliberate omission, as not providing for notice, . . . it makes more sense, in light of the 'opt-in' provision of s 16(b) of the Act, 29 U.S.C. § 216(b), to read the statute as permitting, rather than prohibiting, notice in an appropriate case.") (citations omitted). Orders authorizing notice are sometimes referred to as orders "certifying" a collective action, although the FLSA does not contain a certification requirement.

6

Myers v. Hertz Corp., 624 F.3d 537, 555 n.10 (2d Cir. 2010). The act of "certifying" a collective action, however, means only that this Court has "exercise[d] . . . [its] discretionary power . . . to facilitate the sending of notice to potential class members." Id. The approval of a collective action thus amounts to a "'case management' tool for district courts to employ in 'appropriate cases.'" Id. (quoting Hoffmann-La Roche, 493 U.S. at 169, 174).

The requirements of Fed. R. Civ. P. 23 do not apply to the approval of a collective action. Young v. Cooper Cameron Corp., 229 F.R.D. 50, 54 (S.D.N.Y. 2005). Accordingly, "no showing of numerosity, typicality, commonality, and representativeness need be made." Lewis v. Nat'l Fin. Sys., Inc., 2007 WL 2455130, at *2 (E.D.N.Y. Aug. 23, 2007) (citation omitted). Furthermore, "[i]n contrast to the procedures for a class action under Fed. R. Civ. P. 23," in a collective action, "only plaintiffs who affirmatively opt in can benefit from the judgment." Indergit v. Rite Aid Corp., 2010 WL 2465488, at *3 (S.D.N.Y. June 16, 2010) (citations and internal quotation marks omitted).

"The threshold issue in deciding whether to authorize class notice in an FLSA action is whether plaintiffs have demonstrated that potential class members are 'similarly situated.'" Hoffman v. Sbarro, Inc., 982 F. Supp. 249, 261 (S.D.N.Y. 1997) (quoting 29 U.S.C. § 216(b)). "Neither the FLSA nor its implementing regulations define the term 'similarly situated.' However, courts have held that plaintiffs can meet this burden by making a modest factual showing sufficient to demonstrate that they and potential plaintiffs together were victims of a common policy or plan that violated the law." Id. (citing cases); accord Boutros v. JTC Painting & Decorating Corp., 2013 WL 3110943, at *2 (S.D.N.Y. June 19, 2013); Guillen v. Marshalls of MA, Inc., 841 F. Supp. 2d 797, 800 (S.D.N.Y. 2012). In other words, at this preliminary stage, the focus of the inquiry "is not on whether there has been an actual violation of law but rather on

whether the proposed plaintiffs are 'similarly situated' under 29 U.S.C. § 216(b) with respect to their allegations that the law has been violated." Young, 229 F.R.D. at 54 (citation omitted); accord Guillen, 841 F. Supp. 2d at 800.

Once plaintiffs have opted in and after discovery is complete, "courts conduct a more stringent 'second tier' analysis upon a full record to decide whether the additional plaintiffs are similarly situated to the original plaintiffs." Indergit, 2010 WL 2465488, at *4; accord Pefanis v. Westway Diner, Inc., 2010 WL 3564426, at *4 (S.D.N.Y. Sept. 7, 2010). In dictum, the Second Circuit has characterized the two-step process described above as "sensible." Myers, 624 F.3d at 554-55.

III. ANALYSIS

A. Approval as Collective Action

Plaintiffs argue that they are similarly situated to all "Covered Employees" because they were all subject to the same, allegedly illegal, compensation scheme. Pl. Mem. at 11-12. Defendants argue that plaintiffs have "fail[ed] to submit any substantive evidence or substantiate in any way their contention that other employees worked pursuant to a common policy or plan that violated the law." Def. Mem. at 3-4. In other words, defendants contend that plaintiffs have failed to satisfy their burden for conditional approval as a collective action. See id. at 5-10.

To demonstrate that a proposed group of employees is "similarly situated" to a plaintiff requires only a "modest factual showing." Guillen v. Marshalls of MA, Inc., 750 F. Supp. 2d 469, 480 (S.D.N.Y. 2010) (citation and internal quotation marks omitted). Nonetheless, the burden on a plaintiff "is not non-existent and the factual showing, even if modest, must still be based on some substance." Id.

Here, Garcia and Flores have listed the names and job titles of 15 to 16 fellow

employees, and have described their job duties as involving both delivery work and food preparation work. Garcia Decl. ¶ 2; Flores Decl. ¶ 2. They also state that they have had conversations with and/or observations of these 15 to 16 individuals that allowed them to determine (1) that all these employees were required to work hours similar to theirs, Garcia Decl. ¶ 4, Flores Decl. ¶ 4; (2) that none of them received spread-of-hours premiums when their workdays exceeded 10 hours, Garcia Decl. ¶ 8; Flores Decl. ¶ 8; (3) that none of them received a tip credit notice, Garcia Decl. ¶ 11; Flores Decl. ¶ 11; and (4) that they all spent at least two hours or 20 percent of their time performing non-tipped activities, such as preparing food, Garcia Decl. ¶ 12; Flores Decl. ¶ 12. These declarations provide a sufficient factual showing to justify sending notices to the similarly situated employees. See, e.g., Tornatore v. GCI Comm'cns, Inc., 2014 WL 1404924, at *3-4 (W.D.N.Y. Apr. 10, 2014) (affidavits by two plaintiffs employed as "writers" asserting that a list of between 50 to 100 names were similarly situated in terms of job duties and pay policies sufficient to approve collective action); Romero v. La Revise Assocs., L.L.C., 968 F. Supp. 2d 639, 645-46 (S.D.N.Y. 2013) (plaintiff's declaration, based on personal observation of defendants' policy to engage in various violations of the FLSA with respect to all other tipped employees, was sufficient for purposes of a motion to approve a collective action).

      Defendants complain that plaintiffs' allegations are made "solely" on personal observations and conversations and that there are "no facts or specifics substantiating" the plaintiffs' factual allegations, which defendants characterize as "conclusory." Def. Mem. at 5-6. We reject this argument. First, case law is clear that the affidavit of a single employee can be enough to meet the evidentiary burden. See Cheng Chung Liang v. J.C. Broadway Rest., Inc., 2013 WL 2284882, at *2-3 (S.D.N.Y. May 23, 2013) ("For the purposes of this motion, . . . plaintiffs' evidence — in the form of [one employee's] affidavit — is sufficient to establish that

9

. . . there may be class members with whom he is similarly situated."). Here, of course, there are two employees who corroborate each others' personal treatment and observations of the treatment of other employees. Second, courts have relied on plaintiffs' "firsthand observations" to identify a class of similarly situated individuals. Hernandez v. Immortal Rise, Inc., 2012 WL 4369746, at *4 (E.D.N.Y. Sept. 24, 2012) (citing cases). Plaintiffs in this case have done just that. Their affidavits describe the duties of workers and the practices of management at a single location based on their personal observations and on interactions with specifically identified employees. While it would be helpful to have the time and dates of conversations, it is not surprising that plaintiffs would be unable to recall such specifics.

Defendants argue that this case is similar to Sanchez v. JMP Ventures, L.L.C., 2014 WL 465542 (S.D.N.Y. Jan. 27, 2014), in which the court denied a motion for conditional approval of a collective action where the allegations regarding other employees were based on the plaintiff's "'observations' and 'conversations'" with an unidentified number of other employees, whose first names he listed. Id. at *2. In Sanchez, however, there was but a single plaintiff providing evidence, and the plaintiff was making assertions about multiple job functions at three locations of the employer, only two of which he had personally worked at. See id. at *1-2. The total amount of time the plaintiff had worked at the two locations was only seven months. Id. at *2. There is no indication that the plaintiff in that case had identified by name and job title the individuals he had spoken to or whom he had observed being subjected to similar treatment. Thus, the court in Sanchez properly concluded that the inferences about other employees — that all tipped employees at all three restaurants over a three-year period were subjected to the same treatment as the plaintiff— were not supported by the plaintiff's declaration. Id. at *2. Here, by contrast, there are two plaintiffs attesting to defendants' practices based on their personal

observations and conversations with named individuals at a single location, where both plaintiffs worked for substantial amounts of time.[3]

Defendants also contend that plaintiffs have not demonstrated a "factual nexus" between plaintiffs and the putative collective action members because plaintiffs "do not identify their job duties or responsibilities or discuss that any other Food Trends employees have similar job duties or responsibilities." Def. Mem. at 8-9. Defendants thus argue that there is "no detail, no specifics" that evidence that plaintiffs or their job duties are similar in any way to the putative class of all non-exempt employees. Def. Mem. at 9.

We believe there is some merit to this argument. Plaintiffs' declarations are sufficient to show that they are similarly situated to individuals who performed the functions of food preparer (such as "sandwich preparer" and "salad/pasta preparer") and delivery person, inasmuch as these job functions are specifically identified in plaintiffs' declarations as being performed by other individuals who were allegedly subjected to the FLSA violations. See Garcia Decl. ¶¶ 1-2; Flores Decl. ¶¶ 1-2. The declarations provide no information, however, about individuals who

---

[3] The other cases cited by defendants are also distinguishable. In Ali v. New York City Health and Hospitals Corp., 2013 WL 1245543 (S.D.N.Y. Mar. 27, 2013), the court denied a motion for conditional approval of a collective action where the plaintiff's declaration failed to identify where the other employees worked and "more importantly, why they worked more than 40 hours [per week] (i.e., because of a common plan or policy by Defendants)." Id. at *3. In Barfield v. New York City Health & Hospitals Corp., 2005 WL 3098730 (S.D.N.Y. Nov. 18, 2005), the plaintiff failed to present anything "but limited anecdotal hearsay" to suggest that there was a "widespread practice" of referral nurses "signing up through multiple agencies" in order to work in excess of 40 hours per week, and "no evidence whatever" that this practice was pursuant to a policy of either of the defendants. Id. at *1. In Levinson v. Primedia, Inc., 2003 WL 22533428 (S.D.N.Y. Nov. 6, 2003), the plaintiffs failed to provide any information at all about employees other than themselves. See id. at *2. In Flores v. Osaka Health SPA, Inc., 2006 WL 695675 (S.D.N.Y. Mar. 16, 2006), the court found that the plaintiff's "understanding" as to the amount of work performed by other employees was unsupported by any factual information. Id. at *3.

performed other job functions at defendants' business, and thus we cannot say that there is evidence that plaintiffs are similarly situated to all "non-exempt" employees, as plaintiffs would have it. Accordingly, the collective action must be limited to individuals who performed a food preparation or delivery function for defendants. This is similar to the situation in She Jian Guo v. Tommy's Sushi Inc., 2014 WL 5314822 (S.D.N.Y. Oct. 16, 2014). In that case, the court refused to grant conditional approval of a collective action as to "all of those hourly paid, non-managerial employees of the defendants" where the named plaintiffs were all deliverymen and failed to describe "the specific hours worked by, or the amounts paid to, other employees." Id. at *3 (internal quotation marks omitted). The court did, however, grant conditional approval as to deliverymen employed by the defendants' restaurant. Id. at *3-4 (noting that the information provided by the plaintiffs as to their hours worked and amounts paid allowed the court to "fairly infer that other deliverymen worked similar shifts for comparable pay, thereby suffering the same violations of the FLSA and NYLL").

Finally, defendants contend that certain statements made in plaintiffs' declarations are false. See Def. Mem. at 9; Moskowicz Decl. ¶¶ 5-7. However, "[a]t this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." Lynch v. United Servs. Auto. Ass'n, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007) (citation omitted).

For these reasons, plaintiffs' motion for conditional approval of a collective action is granted but only as to individuals who performed a food preparation or delivery function for defendants.

B.  Issues Relating to the Notice to Employees

Plaintiffs have requested that the Court order several measures in addition to conditional approval of the collective action, including approval of a notice and consent form; the production of names, Social Security numbers, titles, compensation rates, dates of employment, last known mailing addresses, e-mail addresses, and all known telephone numbers of "Covered Employees"; and the posting of notice with consent forms at Food Trends. Pl. Mem. at 1-2; Proposed Order at 1-2. Defendants argue (1) that the notice should be limited to employees who worked for defendants within the three years prior to the filing of the complaint, Def. Mem. at 13-14; (2) that it is premature to require production of Social Security numbers, telephone numbers, and e-mail addresses, id. at 14-16; (3) that defendants should not be required to post the notice at Food Trends, id. at 17-18; and (4) that the proposed notice should be modified because it is "not neutral," id. at 11-12. We address these arguments next.

1.  Notice Period

Defendants argue that the Court should limit the notice to individuals employed within the three years prior to the filing of the complaint. Def. Mem. at 13-14. As defendants correctly note, see id., the statute of limitations under the FLSA is at most three years, see 29 U.S.C. § 255(a); accord Trinidad v. Pret A Manger (USA) Ltd., 962 F. Supp. 2d 545, 563 (S.D.N.Y. 2013), not the six years permitted by New York state law, see N.Y. Lab. Law § 198(3); accord Dragone v. Bob Bruno Excavating, Inc., 45 A.D.3d 1238, 1239 (3d Dep't 2007). While we are aware of cases allowing notice to employees to reach back six years, see Winfield v. Citibank, N.A., 843 F. Supp. 2d 397, 410-11 (S.D.N.Y. 2012) (citing cases), we agree with those cases that limit the time period to the FLSA limitations period, see, e.g., Romero, 968 F. Supp. 2d at 648-49; Trinidad, 962 F. Supp. 2d at 564; McBeth v. Gabrielli Truck Sales, Ltd, 768 F. Supp. 2d 396,

13

400 (E.D.N.Y. 2011). Three years is the maximum time period to join an FLSA collective action and no New York state class action has been certified. "It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims." Hamadou v. Hess Corp., 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013). If a class is certified under New York law, class members will receive notice at that time through the class action notification process.

### 2. Scope of Production

Plaintiffs seek production of Social Security numbers of the similarly situated employees solely for the purpose of using a "skip trace" service to contact employees whose mailings are returned as undeliverable. Pl. Mem. at 12-13.[4] Defendants argue that it is premature to require such information for the entire group when it is necessary only for what may be a small subset who cannot be reached. See Def. Mem. at 14-16. We agree that this issue should revisited once more information is available as to the efficacy of whatever measures are chosen to reach the similarly situated employees. In the meantime, there should be a conversation between counsel to determine what information is in the hands of defendants as to how the food preparers and delivery workers may be located. If there is a need for plaintiffs' counsel to follow up by using Social Security numbers, a renewed application may be made to the Court.

### 3. Posting of Notice at the Business

Defendants argue that the Court should deny plaintiffs' request to order posting of the proposed notice at defendants' place of business during regular business hours because the only employees who will be reached by such notice will be current employees, who will receive the

---

[4] Plaintiffs' request for other information about the employees is being addressed in a separate Order issued today relating to Rule 26 discovery.

same notice by mail.  Def. Mem. at 17.  We recognize that a posting of notice in the workplace is not always an effective or even appropriate way to reach similarly situated employees, and that such a posting may have negative effects on the workplace environment.  See, e.g., Michael v. Bloomberg L.P., 2015 WL 1810157, at *4 (S.D.N.Y., Apr. 17, 2015) (posting of notice in workplace not appropriate "absent a showing that a significant number of notices were returned as undeliverable") (citations omitted).  Accordingly, we deny the request at this time.  Counsel should first discuss the best methods to be used to reach current employees, which might include, for example, the enclosure of the notice with a pay envelope.  If plaintiffs have a basis for believing that such methods have not been successful in reaching current employees, plaintiffs have leave to renew their application.

        4.        Modification of the Proposed Notice

Defendants contest the content of plaintiffs' proposed notice and argue that it should be modified to (1) identify defendants' attorneys, in addition to plaintiffs' attorneys, and (2) provide that any potential opt-in plaintiffs send their consent forms to the Clerk of the Court as opposed to plaintiffs' counsel directly.  Def. Mem. at 11-12.  Plaintiffs do not respond to defendants' arguments, but instead request that the Court allow "counsel to confer and reach an agreement regarding the finalized form of the notice" so as to avoid "unnecessary judicial intervention."  Pl. Reply at 8.  We construe this response to constitute a withdrawal without prejudice of their motion to approve the proposed notice.  Accordingly, the parties are hereby ordered to meet and confer in good faith regarding the content of the proposed notice.  The parties shall submit a joint proposed notice as soon as practicable.  In the event the parties are unable to agree, the parties shall submit a joint letter to the Court identifying the precise issues on which there is disagreement and setting forth each side's position on those issues.

## IV. CONCLUSION

For the foregoing reasons, plaintiffs' motion for conditional approval of a collective action (Docket # 15) is granted in part and denied in part.

SO ORDERED.

Dated: May 4, 2015
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge